on the docket is number 519-0495, People v. Warren. Arguing for the appellant, People of the State of Illinois, is Jessica Book. Arguing for the appellee, Johnny Warren, is Jennifer Lassie. Each side will have up to 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. You'll see the digital timekeeping device on my screen. When time has expired, I will bang the gavel. Please remember, no photographs and only the clerk of the court is permitted to record these proceedings today. Counsel, will the appellant ready to proceed? Yes, Your Honor. You may proceed. Thank you, Your Honors. May it please the court, counsel, Jessica Book for the People. The issue before the court today is how to as an amendment in 2000. And it reads that the 120-day speedy trial term must be one continuous period of incarceration. In computing that term, separate periods cannot be combined. If defendant is taken into custody a second or subsequent time for the same offense, the term will begin again at day zero. So basically, we're looking at whether the in this case restarted when the state refiled the defendant's charges in 19 CF40. They were the same charges, exact five first-degree murder charges that were originally filed in 19 CF6. Stated another way, should this amendment be applied differently than the speedy trial term in 103-5B, which is the 160-day speedy trial term. And if the state's position, they should be treated differently and applied differently. I'll go through a quick summary of the facts. It's been briefed, so I won't go through everything. But I want to point out that in 19 CF6, the defendant was charged and taken into custody. And the state attempted to bring him to trial twice within the 120-day period. But the state, despite their best efforts, was unable to locate a material witness, Fennell Woodson. So the first time they went to trial, the state was ready. They conducted voir dire, excuse me, on the first day of trial. The state had asked for continuance and the trial court had informed them that it wanted to reserve its ruling to see if they could find him before the second day of trial. Because all the other witnesses that had been subpoenaed were showing up or were going to show up. They just were having trouble finding Woodson. So the next day at trial, the state again came in and said we can't find him. We had state and local law enforcement look for him. To no avail, they asked for another continuance. And the trial court informed them at that time that it would grant the continuance, but if it wanted to use 103-5C to go above the 120-day period with the extra 60 days, it would not grant that. So the state, a body, also a warrant was issued for criminal contempt for Woodson, too. The trial court did do that. So the state came back two weeks later and was ready for trial but said we can't locate Woodson again. Could we please have a continuance? The no said I'm not going to grant you the 60-day continuance over the 120 days. So the state was forced to nolly-cross the case. Then on August 5th, 2019, they refiled the exact same charges and took defendant back into custody. And at that point, the defendant said no, my speedy trial demand has been violated. This needs to be dismissed. And the court agreed with them. In doing so, in finding that the speedy trial statute had been violated, the court combined the days in custody in 19 CF6 and then in 19 CF40. So basically, it did not start the count again at day zero. It picked up where it had left off in the first case. It's the state's position that the trial court was incorrect when it did this, when it dismissed it, because according to the statutory language of the amendment, they were required to restart the trial clock again at day zero. So when the defendant was taken back into custody on August 5th, 2019, actually, I think it was the next day, August 6th, 2019, it should have started back at zero instead of combining both periods. If you look at the plain language of the statute, it says if defendant is taken into custody a second or subsequent time for the same offense, the term begins again at day zero. Defendant argues that this, by the use of same offense, means that it should be one continuous prosecution. That instead, in no way, when a state dismisses or nolliprocesses and then refiles, that doesn't count as the same offense. It has to be one charge. So say, for instance, in 19 CF6, if defendant had somehow bonded out or something and was taken back into custody, that would count under 103-5A, but because there was a nolliprocess, it doesn't count. The statute does not apply to it. However, if you read the exact language of the statute, in nowhere does it say it has to be in one continuous prosecution. It says for the same offense. It also says, like at the very beginning of the sentence, that it has to be one continuous prosecution, not one continuous prosecution in which they are incarcerated. It's our position that the language is clear and unambiguous in this instance, and courts must apply the statute as it reads without resort to other statutory construction aids. One second. Okay. The defendant in his brief points out that there are multiple definitions of same and uses being one without addition, change, or discontinuance, basically identical in their argument that this 103-5A only applies to the one continuous prosecution, but the first entry for same in Webster's, which is what they used, what the defendant relied on, I'm sorry, is that resembling in every relevant respect, conforming in every respect, so same could mean when one charge is dismissed, nolliprocessed or whatever, and then refiled, and they're the exact same charges. That does apply as it would here. How does Castillo, that the defendant cites too, how is that not applicable to this case? It actually deals with... 2007 case, right? It is the 2007 case, and it is, and it was entered after the 2000 amendment. However, that case deals with the 160-day speedy trial term, so it deals with 103-5B, not 103-5A. 105-3B. 105-5B is what Castillo... Right, and that one was not amended in 2000. No, it was... Yes, Your Honor. The only amendment was to 103-5A, and People v. Decatur had come out prior to or was in play. It was from 1989, and it did deal with the specific speedy trial statute. However, when there are amendments, it's presumed that the legislature was aware of any cases, holdings, and then chose to proceed in contradiction to that case holding. Here, it is to be presumed that the legislator was aware that Decatur had come out and said, no, they're combined, and then chose to make this amendment to 103-5A, even though it went against Decatur's holding. Then Castillo, from 2007, actually cites to Decatur when it's looking at 103-5B. So, that is our position, that it's not applicable here because it's dealing with a different provision of the speedy trial statute. The defendant also mentions frequently in his brief that the state, the courts look disfavorably on manipulating proceedings. I just want to point out that here, the state did everything in its power to go to trial. It was ready to go to trial twice, except it could not get Woodson to appear. It had law enforcement officials, U.S. Marshals at one point, the Alexander County Sheriff's Office. Everybody was looking for him, for Woodson. Actually, he was located after the state nolliprossed the case because it needed him. He was a material witness, but he was located, and he is now spending time in DOC for his criminal contempt in avoiding appearing for court. Is it true that he received a seven-year sentence on that charge alone? Yes, he did, Your Honor. In People's Exhibit A, I believe, it was part of the motion to supplement the record when I filed my reply brief. It's part of that, and it shows all those documents are in there. So, it's the state's position that when looking at this amendment, that is straightforward, clear, plain language reads that if the state files a charge and then nolliprosses and then refiles the exact same charges, the SPD trial clock begins again at day seven. Time has expired, and you'll have rebuttals. Okay. May it please the court, counsel. My name is Jennifer Lassie, and I represent the defendant, Johnny Warren. The state is asking this court to strip the SPD trial statute of its meaning and of its protections. The state's interpretation of the SPD trial statute would create potential for abuse where the state could dismiss and refile identical charges again and again. Doesn't the statute prevent that in and of itself? Doesn't it say that the court has the ability to assess whether the nollipross is being used for those nefarious reasons and not allow it, as opposed to where it finds that there's just reason for the nollipross and the restarting of the 120 days? I don't believe that's written into the statute. I don't believe that's written into the SPD trial statute itself. I don't believe that's written in there, as far as I'm aware. So the state, on page seven of its reply brief, and just now in oral argument, the state agrees that if a defendant out on bail and subject to section 1035B, if that defendant had charges dismissed against him and identical charges refiled, the state agrees that that defendant's where it left off. So it would lead to absurd results to find that a defendant in custody had fewer protections than a defendant out on bond and subject to section B. So the amendment does not allow the state to start over again at day zero. And when you look at the statute in its entirety, that becomes clear. If you focus solely on the 2000 amendment, the state's argument at first appears reasonable. But when you look at the statute in its entirety, it's clear that this amendment was meant to apply to keep defendants from benefiting from delay that they had caused. So the statute starts, the very first sentence, it begins, every person in custody in the state for an alleged offense shall be tried within 120 days. And then in that same sentence, it says, unless delay is occasioned by the defendant. And the remainder of that paragraph talks about why delay would be attributed to a defendant. This whole section is about keeping the defendant from benefiting from delay that he has caused. So in that context, it's clear that this amendment, the 2000 amendment, was meant to prevent a defendant from bonding out on day 115, violating his bond, and then trying to force the state to bring him to trial within five days to meet that 120-day timeline. That's why, in context, when you look at the statute as a whole, it's clear that this amendment was meant to apply to one same continuous uninterrupted prosecution. To find otherwise would allow the state to dismiss charges and refile identical charges again and again. Now, the Illinois Supreme Court in People v. Van Schoik, and this court in People v. Kilkowski has recognized that the speedy trial statute is to be liberally construed in favor of the defendant, and that the state cannot manipulate it or purposefully evade the provisions of the statute. Illinois courts have long recognized that the state has unfettered discretion to nollie pros cases, and because of the potential for manipulation, nollie pros charges are treated differently with respect to speedy trial terms. When the state nollie prosses charges only to refile identical charges, Illinois courts have found that the clock is told during that interim following dismissal, and that the clock begins again when charges are refiled. It doesn't make sense to have a distinction between defendants under Section 1035A and defendants under 1035B, and if you look at the Supreme Court's 2009 decision in Van Schoik, I think that becomes clear. Now, there the defendant was under Section 1035B, but the principles are what are important. There, the court said the state may not avoid a speedy trial demand by dismissing a charge only to refile the identical charge for the identical offense based on the identical acts. The voluntary dismissal and the subsequent refiling of identical charges do not hold the statute, and that's on pages 339 and 340 in Van Schoik. So, it's clear when you read this amendment in context with the whole of the statute, it's clear that it's meant to keep defendants from causing delay. So, a defendant who post bond violates and then is rearrested, his clock would start again at day zero, and the state argues that it doesn't make sense to distinguish between that defendant and a defendant like Mr. Warren. However, a defendant who post bond violates and is rearrested should start at day zero because he should not benefit from his own, you know, bad conduct or his own actions. He shouldn't be able to post bond on day 115, violate, come back in, and then force the state to bring him to trial only giving the state five days to do so, to meet this 120-day deadline. Mr. Warren is distinct from that defendant because here it is the state that is bringing him back into custody. It's not he who's bringing himself back into custody through his own actions. It's the state action that is bringing him back. So, when you read the statute as a whole, I think that becomes clear. Now, the state in its brief quote Senator Dillard statement to support the argument that the bill here requires that you don't add separate periods of incarceration. However, I just wanted to clarify that Senator Dillard's statement only parrots the wording of the statute, and he does not actually clarify or explain any legislative intent within his statement. Another point is that the state has supplemented the record from Fennell Woodson's case, the witness who failed to appear. Now, the state argues in its reply, and here during oral argument, that this court should consider, you know, the state's attempts to secure his presence. However, the state never challenged the court's denial of its request for a continuance regarding, the state attempted to get an extension, and the state never challenged that. The court denied that request, and the state didn't challenge that. The state only challenges whether the court can combine two distinct periods, two periods of incarceration. So, the record's clear that the state nolly-crossed because it could not bring Mr. Warren to trial within the 120-day timeline. However, whether the state had malintent or acted with due diligence, all of that is irrelevant in this appeal. Mr. Warren is not asking this court to ignore those facts. It's just that they're simply irrelevant under Illinois law because he is not asking for that interim period between dismissal and refiling. He's not asking for that period to also count towards the speedy trial log. You only have to consider whether the state had malintent if the defendant is asking that you also count that time. So, for example, if he wanted the counted towards that 120 days, then he would have to establish that the state acted with malintent. And because he's not requesting that you count those additional days, it's just simply irrelevant the facts regarding Mr. Woodson's case and his failure to appear. Let's see. Finally, I think the statute's clear on its face. In context, when you look at the whole statute, it's clear that it's meant to keep a defendant from benefiting from his own bad actions from delay that he has caused. And finally, should this court find that the statute is ambiguous, considering the fact that the statute is to be interpreted liberally and in favor of the defendant and taking into consideration the rule of lenity, this court should find that the statute should be interpreted in the manner that Mr. Warren suggests. Does your honors have any questions? Mr. Warren respectfully requests this court affirm the circuit court's order dismissing the charges. Thank you, counsel. Rebuttal? I'm sorry, I was muted. Yes, your honor. Two things. Defense counsel has repeatedly said that it is clear that this amendment to the statute is to prevent the defendant from subversing the statute and the speedy trial and abusing that. But that's not clear that this amendment, that's not clear that this is the purpose of this amendment. That language is actually in the portion before the amendment that says that. So that's laid out. We're not arguing that that's not in there, but that's laid out. This was an amendment to add to that, not to clarify that. There was never any, there was, excuse me, there was never any indication by the defendant in this case that the state was using the nolly in a malicious way. Was there? No. Alleged. No, that that was not alleged because the defendant argued successfully in front of the trial court, at least successfully for him in front of the trial court, that his speedy trial statute had been violated just based on the days in custody. So the other issue, defendant claims that there should be no distinction between 103-5A and 103-5B and that they should be treated the same when you look at restarting the clock at day zero. But the legislator specifically made that distinction when it enacted the 2000 amendment. It chose to add that restarting the clock at day zero for 103-5A, but it did not add that same amendment to 103-5B. So whether or not defendant claims there's a distinction, the legislature chose to make a distinction. And the cases that defendant has presented all deal with 103-5B and how the courts interpret that when it comes to nolly pros and refiling the same charges. But there's no cases that are exactly on point that deal with how to apply 103-5A when there's a nolly pros. So it's the state's position that the trial court was in error when it dismissed this case because looking at the plain language of the statute, the defendant's clock should have restarted again at day zero when the state filed 19 CF-40 and took him back into custody. Are there any questions? I see none. Thank you, counsel. The court will take the case under advisement and you'll be excused. Thank you. I'm sorry, did we everybody? Yeah, we're okay.